CITY OF MIAMI v. FRANCES BOPP.

158 So. 89.
Division B.
Opinion Filed December 6, 1934.
Petition for Rehearing Denied December 27, 1934.

*J. W. Watson, Jr., Mitchell D. Price & Charles W. Zaring* and *Jack R. Kirchik,* for Plaintiff in Error;

*Ruff & Ready* and *Hendricks & Hendricks,* for Defendant in Error.

BUFORD, J.—We consider here writs of error from two judgments. Both cases are identical except the names of different parties. They were tried together in the court below, the same evidence applying to both cases.

The verdict was in favor of the defendant.

Motion for new trial was made and granted.

Writ of error is to review the order granting new trial
One of the grounds for the new trial was:

"Because the verdict returned by the jury is not the verdict of each juror and of all the jury trying the case."

There are thirty-two other grounds stated in the motion. In support of the quoted ground of motion certain affidavits were presented to the Court. One of these affidavits is as follows:

"Before me, the undersigned authority, this day personally appeared CHARLES BROWN, who being by me first duly sworn states on oath that he was a member of the jury which recently tried the cases of Frances Bopp v. City of Miami and Carolyn Wolfe v. City of Miami; that from the evidence introduced upon said trial he was, and still is of the opinion that verdicts should have been rendered against the City of Miami, and that the verdicts in favor of the City of Miami which were rendered are not in accordance with the views of this affiant as formed by him from the evidence introduced; that during the progress of these cases affiant saw a statement in the Miami Herald relative to the cases and he mentioned this fact in the Jury Room, and that thereafter when the Jury were deliberating on the verdicts to be returned, the foreman of said Jury, Harry B. Peacock, threatened affiant that if he, affiant, did not agree to render verdicts in favor of the City of Miami, he, the foreman, would report to Judge Thompson, who was presiding during the trial of said cause, that affiant had read the newspaper account, and the said foreman further threatened that this would get affiant in trouble. Thereafter, affiant consented to the returning of the verdicts in favor of the City, but affiant refused to sign either of said verdicts."

This affidavit is corroborated by the affidavit of another juror in the following language:

"Affiant further makes oath that during the progress of said cases, one of the other members of the Jury, Charles Brown, while in the Jury Room referred to an account of the cases which he had read in a newspaper, and that thereafter the foreman of said Jury, Harry B. Peacock, threatened the said Charles Brown that if he, the said Brown, did not agree to render verdicts in favor of the City of Miami, he, the foreman, would report to Judge Thompson that the said Charles Brown had read the newspaper account, and he said that if he did this it would get the said Charles Brown into trouble. Thereafter, the said Charles Brown withdrew his objections to rendering verdicts in favor of the City of Miami."

These statements made by the jurors were contradicted in other affidavits presented, one signed by Harry B. Peacock, who appears to have been foreman of the Jury, and another by Durant D. Weaver, a member of the Jury.

The Order of the court on the motion is as follows:

"The motion for a new trial heretofore interposed by the above named plaintiff, Caroline Wolfe, and which motion was filed on the 23rd day of June, 1933, coming on for hearing, and after argument of counsel and consideration of affidavits and briefs filed in relation to said motion and the Court being duly advised in the premise;

"It Is Thereupon Ordered that said motion for a new trial be and the same is hereby granted, to which ruling of the Court the defendant, City of Miami, duly excepts.

"Done and Ordered in Chambers at Miami, Florida, this 25th day of October, A. D. 1933."

If the thing transpired which the juror, Charles Brown, and the juror, Lewis H. Dodge, said in their respective affidavits did transpire, then the verdict of the Jury was influenced by the consideration of matters outside the evidence and was brought about by unlawful and illegal means.

It is true, as a general rule, on the ground of public policy that the affidavit, deposition or statement of a juror will not be received to impeach his own verdict, but this Court has heretofore recognized exceptions to that rule and especially that exception which is generally recognized by the courts of this country.

In Linsley v. State, 88 Fla. 135, 101 So. 273, we said:

"It is upon grounds of public policy that the rule is observed that the affidavit, deposition or statement of a juror will not be received to impeach his own verdict; but this rule relates to matters resting in the personal consciousness of the juror, as said by Mr. Justice BREWER in Perry v. Bailey, 12 Kan. 539. When a juror is heard to impeach his own verdict because of some matter resting in his own consciousness, the power is given to him to nullify the expressed conclusions under oath of himself and eleven others. The general rule is that affidavits of jurors are admissible to explain and uphold their verdict, but not to impeach and overthrow it. But this general rule is subject to this qualification, that affidavits of jurors may be received, for the purpose of voiding a verdict, to show any matter occurring during the trial or in the jury room which does not essentially inhere in the verdict itself." See Perry v. Bailey, *supra*.

"The rule is general, with few exceptions, if any, that the testimony of jurors will not be received to impeach their verdict. See Bartlett v. Patton, 33 W. Va. 71, 10 S. E. 21, 5 L. R. A. 523, and note; 27 R. C. L. 896.

"The rule announced in the Kansas case seems to us to be a salutary one and more consistent with reason and sound policy. That rule, as announced by Mr. Justice BREWER, is that all those matters lying outside the personal consciousness of the individual juror, those things which are

matters of sight and hearing and, therefore, accessible to the testimony of others and subject to contradiction; the interest of justice will be promoted and no sound public policy disturbed, if the secrecy of the jury box is not permitted to be the safe cover for the perpetration of wrongs upon parties litigant. If the jury has been guilty of no misconduct no harm has been done by permitting their testimony to be received. If the jury has been guilty of misconduct, but such misconduct was not of such a nature as to prejudice the rights of the parties, the verdict should stand, but the offending juror should be punished. But if such misconduct has wrought prejudice, not only should the juror be punished, but the verdict should also be set aside; but matters resting in the personal consciousness of one juror should not be received to overthrow the verdict, because, being personal, it is not accessible to other testimony.

"We are not advised by the Order of Court just what ground, or grounds, of the motion for a new trial were held to be well taken, but inasmuch as the Order does state that the Court has considered these affidavits, amongst other things, and thereupon grants a new trial, the inference is that the trial court found the verdict had not been rendered without improper influence.

"The law applicable to the case was stated by this Court in Wolfe v. City of Miami, 103 Fla. 774; 134 Sou. 539, and in a further opinion in the same case on rehearing following the above cited opinion in the Florida Reports and reported in 137 Sou. 892.

"There is exhibited in the present record much conflict of testimony. Charges given and refused by the court have been discussed at length in the brief and at the bar of the court in oral argument, but it is not needful for us to discuss those questions.

"The rule is well settled that trial courts have a liberal discretion in granting new trials.

"In Woods v. A. C. L. Railroad Company, 100 Fla. 909; 130 Sou. 601, we held that this was almost a matter of complete discretion. See cases there cited.

"An order granting a new trial will not be reversed where no abuse of sound discretion in granting a new trial appears. Ziegler v. Erler Corpn., 102 Fla. 981, 136 Sou. 718; Woods v. A. C. L. R. R. Co., *supra*.

"To warrant an appellate court in disturbing an order of the trial court granting a new trial, it must clearly appear either that there has been an abuse of sound judicial discretion resulting in injustice or that some settled principle of law has been violated. Dunnellon Phosphate Co. v. Crystal River Lbr. Co., 63 Fla. 131, 58 Sou. 788; Jones v. Jacksonville Elec. Co., 56 Fla. 452, 47 Sou. 1; Zackery v. Georgia, etc., R. Co., 62 Fla. 419, 56 So. 686; Anthony Farms Co. v. Seaboard Air Line Ry., 69 Fla. 188, 67 So. 913; Miami Transit Co. v. Mowry, 103 Fla. 840, 138 So. 481; Herrin v. Avon Mfg. Co., 87 Fla. 385, 100 So. 174; Florida East Coast Ry. Co. v. Turner, 103 Fla. 300, 137 Sou. 255; Ruff v. Georgia, etc., Ry. Co., 67 Fla. 224, 64 So. 782; Cheyney v. Roberts, 77 Fla. 324, 81 So. 475; Carney v. Stringfellow, 73 Fla. 700, 74 So. 866; Lockhart v. Butt-Landstreet, 91 Fla. 497, 107 So. 641; Suttle v. Burbridge, 91 Fla. 275, 107 So. 646; Aberson v. Atlantic Coast Line R. Co., 68 Fla. 196, 67 So. 44; Huston v. Green, 91 Fla. 434, 107 So. 368, 108 So. 846; Scott v. National City Bank, 107 Fla. 818, 139 So. 370, 142 So. 650, 143 So. 444, 146 So. 573."

The necessary showing has not been made to warant this Court in reversing the judgment here in consideration. It is, therefore, affirmed.

So ordered.

WHITFIELD, P. J., and BROWN, J., concur.

DAVIS, C. J., and ELLIS and TERRELL, J. J., concur in the opinion and judgment.