THE FLORIDA RAILROAD COMPANY, APPELLANT, VS. GENSLER & SILBERSTEIN, RESPONDENTS.

1. A general appearance by pleading to a complaint or declaration confers jurisdiction of the parties, and no defect in the original process, or in the return, or manner of service, can be urged as ground for reversing or setting aside the pleadings, after such appearance.

2. Where it plainly appears that the damages awarded by a verdict are excessive and not warranted by the proof, or that the finding as to the amount is contrary to or palpably unsupported by the evidence, the verdict should be set aside.

Appeal from the Circuit Court for Alachua county, Fifth Judicial Circuit.

In 1869, Gensler and Silberstein, the Respondents, brought their action in the Circuit Court for the county of Alachua, against the appellant, as a common carrier, for the recovery of the value of certain goods shipped by them from New York to Gainesville in this State, and alleged to have been lost while in the custody of the appellant. Annexed to the declaration was a bill of particulars of the plaintiffs' demand, consisting of a list of the goods specifically named, with the prices and value affixed to each item, which articles are named as so many coats, so many vests, pairs of pants, three cases of boots and shoes and two chairs. The value of the coats, vests and pants is named at New York prices, in the aggregate at $432.75; of the three cases of boots and shoes

at $143.10, and of the chairs, $10, to which is added twenty five per cent., making the sum of $729.60; which, it is claimed, was the value of the goods in Florida.

The defendants denied their indebtedness and liability.

The cause was tried by a jury, who found a verdict for plaintiffs for $729.60 at the November term, 1869.

On the trial the plaintiffs introduced M. Gensler, one of the plaintiffs, who testified that a memorandum handed to him "was taken down as missing property at the time he received freight from the Railroad Company. This memorandum was made out when I discovered some goods were missing. The list was made out in my store. *  *  I arrived here the 11th day of October, 1868. I received some goods the 12th October. The 14th I received more goods. *I can't recollect how many packages I received after that.* I opened goods on the 14th when I received the goods. I was short one case clothing, three cases of shoes and two mahogany chairs." Witness says further that he sent out by steamer "Flag" 47 packages and more; "don't know how many. Had lost some bills of lading for that same trip. All the goods packed in New York I put on the memorandum. The goods that I packed were put in seven boxes. Only six boxes arrived, there was one box short, and the memorandum of lost goods were in one box. There were *thirteen* cases of shoes shipped; only ten arrived, and two mahogany chairs where shipped that I did not receive.— Eight were shipped and only six were delivered. The box containing the memorandum lost was not delivered to me." The witness produced a memorandum which he says was made out from goods shipped from N. Y. "The prices and value on this memorandum are correct and this amount was missing. The total amount of clothing lost is $432.75, shoes $143.10, chairs $10. This is the value in New York —$585.85. The value of the goods here is $729.60. Witness does not know how many packages were sent out from New York in the steamer."

A letter of A. B. Noyes, Superintendent of the Florida Railroad, was read in evidence by plaintiffs, in which he states to the plaintiffs that the Railroad company received and forwarded from Fernandina to Gainesville all the packages of goods shipped or claimed by plaintiffs to have been shipped by the steamer "Flag" from New York, and that the packages sent over the railroad agree with the ship's freight list, stated to be 105 packages. A letter written by Mr. Maxwell, agent of the road at Fernandina, states that the number of packages as appeared by the steamer's manifest was 113, and that 112 packages were sent forward over the railroad, and that the missing package was ascertained to be "furniture." Mr. Maxwell testified that the railroad received and forwarded 105 packages, besides four trunks, and all the packages of chairs. That the railroad company received thirteen cases of shoes and forwarded ten at one time and three at another time.

J. B. Brown testifies that he was a public drayman at Gainesville and hauled goods for plaintiffs in October, 1868, and that they authorized him to haul their goods and receipt for them. Mr. Brown's receipts are produced showing that he received for plaintiffs, among other goods, three cases of boots and shoes at one time and ten cases of boots and shoes at another time on the 13th October, 1868, making thirteen cases.

Some further testimony was given on both sides, but the foregoing statement exhibits the material features of the case.

The defendant, after verdict, made a motion to set aside the verdict and for a new trial upon grounds noticed in the assignment of errors. The judge denied the motion, and judgment was entered upon the verdict in favor of the plaintiffs, and the defendant appealed.

*Finley & Finley* for Respondents.

*Peeler & Raney*, and *J. B. Dawkins*, for Appellant.

RANDALL, C. J., delivered the opinion of the court.

The appellant assigns as error that the Court refused to set aside the return of service of the process by which this suit was commenced, because there was no legal service upon the defendant.

We declined, however, upon the case being presented, to hear an argument on that subject, because it appeared in the record that after making the motion and its denial by the Circuit Court, the defendant pleaded issuably to the declaration.

A general appearance and plea to the declaration has always been held by the Supreme Court in this State to give the court jurisdiction of the party pleading, and thus to waive any defect of service or even want of service. This we believe is the general rule throughout the country.

It is alleged for error, further, that the court erred in permitting the bills of lading and dray recepts to be given in evidence against the defendant. From the manner in which the record is made up, we cannot discover precisely under what circumstances the papers were offered, or the objections made, or the grounds of the objection. Such papers may or may not be made evidence, according to the circumstances under which they are offered. In this case we regard the dray receipts as very important evidence for the defendant, in connection with the other testimony.

Another error assigned is, that the verdict of the jury was unsupported by the evidence, and contrary to the evidence.

The testimony, as it appears in the record, seems to have satisfied the jury that the specific goods mentioned in the plaintiffs' bill of particulars were received by the railroad company and were not delivered to the plaintiffs. The verdict, fixing the amount of the plaintiffs' damages, corresponded with the testimony of one of the plaintiffs in that respect. The verdict was for the sum of $729.60. The statement of the plaintiff was that he lost one case of

clothing costing $432.75; three cases of shoes costing $143.10; two chairs costing $10, and adding twenty-five per cent. to these, he fixes the amount at $729.60 as the value of the goods in Florida which were lost to him, and this the jury gave him.

It will be noticed that Mr. Gensler testified that the memorandum shown to him on the witness stand was " taken down as missing property at the time I received freight from the railroad company. This memorandum was made out when I discovered that some goods were missing. The list was made out in my store. I received some goods on the 12th October, 1868. On the 14th more goods. I cannot recollect *how many packages I received after that.* I opened the goods on the 14th; when I received the goods I was short one case of clothing, three cases of shoes and two mahogany chairs. He did not know how many packages were sent by the steamer from New York and had lost some of his bills of lading. The goods I packed were put in seven boxes and only six arrived. There was one box short and the memorandum of lost goods were in one box. There were thirteen cases of shoes shipped and only ten arrived. Eight chairs were shipped and only six arrived." It is demonstrated as clearly as it is practicable to do so, that the $729.60 named by the jury, was the $729.60 given by the witness. And it is shown by the testimony of Mr. Brown, the drayman, and by his receipts, that thirteen cases of shoes, the precise number shipped by the plaintiffs, were delivered to Mr. Brown for the plaintiffs at the depot in Gainesville and that Mr. Brown was authorized to receive them. If the three boxes or cases of shoes were not delivered to the plaintiffs at their store, it is evident that the defendant should not be charged with the loss of them. Again: the plaintiff, Gensler, testified that he missed the goods on the 14th October when goods were being delivered at his store, and then made out the memorandum of missing goods. That he received goods after that, but " does not recollect how many

Florida Railroad Co. v. Gensler & Silberstein.

packages after that." This memorandum was doubtless the memorandum of goods upon which he estimated his loss, and it would seem that it was made out while receiving goods and before all the goods received were delivered to him. This may not have been the aspect of the case before the jury, but this is what we learn from this record. If our view of the testimony is correct, the memorandum of goods lost was made out and the loss estimated before it could have been known what goods were lost, and the plaintiff says he does not know how many packages were afterwards received by him. Mr. Brown's receipts show that he received for plaintiff's *after* the 14th October, (when the goods were missed by plaintiffs,) several boxes, barrels, cases, &c., of goods.

It may be that the list of goods mentioned in the bill of particulars is the list or memorandum mentioned by Mr. Gensler, but the case as presented does not show that the goods mentioned in the bill were in the box or case which was missed. The bill calls for certain specified articles, but it does not appear that the specified articles were in the lost box. Doubtless the jury were satisfied of the fact, and it may be that they inspected the memorandum from which the witness testified, but the record does not show it. This apparent absence of a substantial link in the testimony, as to the identity of the goods, standing alone, might not warrant us in disturbing the verdict of the jury, because we ought to presume, probably, that the goods were identified to their satisfaction, otherwise than by their estimated value. But as to the boots and shoes we think a grave mistake was made, and upon the showing in the case stated in the record, the verdict was in this respect clearly excessive and against the evidence, and must be set aside for that reason. There is some confusion in the statements and letters of the agents of the railroad company as to the number of packages received and forwarded by railroad, but there is none as to the delivery by the defendant to the drayman of the plaintiffs

of the thirteen cases of shoes, and it can scarcely be said that there is any conflict of testimony upon that subject, for the plaintiff, Gensler, does not controvert the testimony of Brown or the correctness of his receipts for the goods.

The judgment is reversed, and the Court below is directed to set aside the verdict and grant a new trial.